Ms. Smith and Mr. Dahl, whenever you all are ready. Thank you, your honors. May it please the court. My name is Amy Smith, and I'm here this morning on behalf of Wheeling Power Company-Mitchell Plant. There are two questions on appeal this morning. The first is whether the district court should have dismissed this action under the complete arbitration rule that this court established in Peabody Holding. The answer to that question is no. The second question is whether the arbitrator exceeded his authority under the collective bargaining agreement in this case. The answer to that question is yes. Your honor, the answer to both questions is really controlled by Article 3, subsection B of the collective bargaining agreement. That's the Rights of Management Clause. And Article 3B provides the company shall have the right to assign or contract work to persons or organizations not represented by the union. This right is limited only to the extent that it shall not be exercised when such action directly results in the layoff or discharge of any employee covered by the agreement. And it further provides that in the event of arbitration over the company's exercise of the right set forth herein, the sole question for the arbitrator shall be whether the company has violated the foregoing limitation. Your honor, Peabody Holding, which established the complete arbitration rule, made it clear that the scope of the arbitration is controlled by the collective bargaining agreement. In this case, the sole question under Article 3B was whether the company violated the arbitration provision and specifically whether anyone was discharged or laid off by virtue of the company invoking Article 3B. The arbitrator answered that question in the negative. That is, the arbitrator found that no one was discharged or laid off when the company invoked Article 3B. And that concluded the arbitrator's sole question and sole authority under the collective bargaining to proceed with the arbitration. When the arbitrator continued and said that it would next consider a remedy, that was outside the scope of the arbitration. The complete arbitration rule was satisfied when the arbitrator made the determination early in his award that, in fact, no one had been laid off or discharged. But if the arbitrator reserved his right to revisit if the parties couldn't agree on a remedy, it sounds like the arbitration is not complete. Your Honor, that is correct that the arbitrator purported to reserve his ability to fashion a remedy if the parties could not agree. However, the arbitration provision in the CBA did not give the arbitrator the authority to fashion a remedy. This is a case where the sole question was whether anyone was laid off or discharged. That's very clear. Even though it seems like the union didn't rely on Article 3B, they were relying on Article 2. So how does that impact your answer? Well, Your Honor, Article 2 is the union recognition clause of the provision. That's a general clause that applies to determine who is recognized by the union. However, even the arbitrator recognized in his decision that if there is a specific clause that applies, that that controls over the general clause. And from the beginning, the company has been invoking Article 3B and the management rights clause. And I refer you to page 261 of the joint appendix, the arbitrator's decision, where he recognized that even if the Article 2 applied, which is not at issue here, but the company believes it does not apply. That, in fact, they're not part of the bargaining unit. But even if it did, that it's the specific clause that controls under these circumstances. Can I ask you a question about you mentioned the scope of the arbitration agreement, and you highlighted, I think quite correctly, the third sentence that purports to limit the arbitrator's authority to decide whether or not workers were laid off, and if not, that should be the end of the analysis. That's your position. So is that, as I understand it? Yes, Your Honor. Is that, that third sentence, are we talking about arbitrability in the classic sense? And is that a question for the arbitrator or for the court? And if so, the district court didn't really grapple with that issue, so why wouldn't we send it back to the district court to decide the meaning of that clause? Or is it so clear that we need not do that? Your Honor, it's very clear in this instance that the arbitrator exceeded the scope of the arbitration agreement when he went beyond that third sentence, and so. And I appreciate that, but there's a separate clause, obviously, that talks about the arbitrator's power to interpret the terms of the agreement and any disputes related to, I forget the article, section of maybe 12 or 11, I don't remember. And that's traditionally what we look to to see what the scope of the arbitrator's power is. This agreement is a little bit unusual because within Article 3 you have this express limitation. But couldn't you read Article 3 as simply just another article for the arbitrator to interpret the way he viewed it is, rightly or wrongly, he thought that because these workers that came in on a short-term basis quacked like a duck, you know, walked like a duck, they looked like union workers, that that fact violated Article 2 of the agreement that Judge Yoon just talked about. And you may disagree with that. That may be completely wrong, but he was interpreting the agreement. And that's what the district court found, and that's the end of the story. Well, Your Honor, that goes to the merits of the argument, I believe, more than the complete arbitration rule. But with respect to that and the question of whether the arbitrator exceeded his authority under the CBA, and perhaps they're related questions, but the arbitrator exceeded his authority under the CBA in two fundamental respects. First, in continuing his analysis after he made the finding that no one was laid off or discharged. But secondly, and equally importantly, the arbitrator exceeded the scope of his authority to decide this under the CBA when he ignored the plain meaning of the word assigned in Article 3B. Article 3B gives the company the right to assign or contract work to persons or organizations not represented by the union. And nowhere in the analysis of the arbitrator did he consider whether the CTC employees here were assigned work under the collective bargaining agreement. He analyzed whether they were contract employees. And the arbitrator said they weren't contract employees. But in fact, the company had been arguing all along that these union employees, or that the CTC employees, rather, were assigned work under Article 3B. There's nowhere in the opinion of the arbitrator where he considered that. This is very much like the Clinchfield Coal case where the arbitration provision allowed assignment under circumstances where I believe they were coal lands that were assigned. The arbitrator only considered coal mining operations. And the court reversed the decision because, in fact, the arbitrator clearly ignored in his arbitration decision a key term. That's the same thing that happened here with regard to the word assignment. There was no consideration by the arbitrator of whether the company assigned work under Article 3B as opposed to contracted the work out under Article 3B. This is something that's important because it's just like the RSO employees. That the company has assigned work to before. And it's in the brief. But that was something that was expressly negotiated as part of the agreement, right? No, Your Honor. It was not negotiated as part of the agreement. The arbitrator said something. It says that there was a consent. There's no consent to it. It's not in the arbitration agreement. And that's important, too, because the arbitration agreement does have a zipper clause. The arbitration Article 13 has a zipper or integration clause that means that this is the only agreement. Also, the Article 10 has two separate provisions that say the arbitrator cannot enlarge or contract the terms of the CBA. But the RSO workers, and this is on page 17 of the reply brief, there's a little chart that shows exactly how the RSO workers are analogous to the CTC employees. First, they're both, in both instances, they're employees of different AEP utility companies. So the RSO workers are employees of a different utility. The CTC workers were employees of a different utility as well, the CTC plant. And this all happened, this all came about because there was a fire at the CTC plant, or CCT plant. And at the same time, the Mitchell plant needed additional workers. And so there's a memorandum of understanding. It's in the, at least portions of it are in, quoted in the arbitrator provision. And those portions make it clear that these were CTC employees, not Wheeling Power Mitchell plant employees. In both cases, the RSO employees were not represented by the union, Local 492. The CTC employees were not represented by the union, Local 492. Can I ask a question about Article 2 and any limitations that the employer has with respect to honoring that article that identifies the union as the exclusive bargaining representative for the plant? So we have that clause in the agreement, right? Your Honor, that clause is limited because Article 2 begins by saying employees of the company. And in fact, the company is defined in the Article 2, Section 1 as Wheeling, in this instance, Wheeling Power. Prior to that, there was a different entity, I think Kentucky Power. But if you look at Section 1 of Article 2, it's limited to employees of the company. And it's Wheeling Power's position in this case that the CCT employees were not employees of Wheeling Power. And you've got to look to that definition. That's fair enough. I actually was going to ask a different question. So could the employer hire employees of an entirely different union? I'm not sure how the mechanics of this would work. And make explicit the fact that this union was coming in to fill new jobs, was not the exclusive bargaining representative for the employees at the plant, but still was being allowed to bring on employees under Article 3. And so the current employees are not losing their jobs. No one is being laid off. You're just adding additional employees who are members of a different union. Is that a problem? Could that happen? Your Honor, Article 3 is not limited in terms of whether someone's an employee, not an employee. It's in terms of persons. And it's very broad. And it does say that you can bring in the company shall have the right to assign or contract work to persons or organizations. So the answer is yes? The answer would seem to be yes, so long as no one was laid off or discharged under those circumstances. It's a very broad, very strong rights of management position. I guess your response to the union's complaints is that they negotiated this agreement and negotiated this limitation. Well, yes, Your Honor. It's a very strong management rights provision that is not limited. It's they can assign or contract work to persons or organizations not represented by the union so long as no one is discharged or laid off. Now, the circumstance here, of course, is not the circumstance that Your Honor has just come up with. Your position is this case shouldn't have, this matter shouldn't have gone to arbitration at all. Your Honor- As I understand your answer to the Chief's question. I mean, it's the union's prerogative to bring an arbitration proceeding, but I think that under the circumstances- Let's put it this way. You said that the only question was, was someone fired. Who posed that as the sole question to the arbitrator? Your Honor, it's in the CBA and it's not simply fired. It's when article- When was the job? It's laid off or discharged. Okay, but who- And that is the sole question. When the arbitrator told that's the only thing he or she could do? Your Honor, the arbitrator recognized Article 3B was the provision that the company was invoking under this and it did- You invoked the management rights clause, right? Correct. But the union invoked the recognition clause. Correct. Well then, they're both clauses that are in the CBA, correct? Correct. But therefore, the arbitrator, wouldn't he or she have to have the authority to look at both clauses to balance both the facts and to adjudicate and make a decision? Your Honor, the arbitrator recognized that the specific provision in Article 3B would control if it applied under the circumstances. And the arbitrator did make the determination that no one was laid off or discharged. So the arbitrator got it wrong, right? The arbitrator exceeded the scope of his authority when he went beyond the finding that no one was laid off or discharged in the application of rule or Article 3B. It seems like you disagree with it. Well, Your Honor, it's more than simply a disagreement. It's that he exceeded the scope given to him under the collective bargaining agreement. All right. Thank you, Your Honor. Thank you very much. Mr. Dahl. Good morning, Your Honors. My name is John Dahl. I'm here on behalf of Local 492 and the bargaining unit members that that union represents. Obviously, we have a completely different view of this case, and I'll explain to you why. First of all, in response to Judge Gregory's question, this matter came to arbitration because a grievance was filed. The grievance referenced Article 2 and other articles that would apply. So it came to an arbitrator as a result of a grievance alleging a violation of a specific provision and any other provisions that may apply to the case. The employer raised the issue that 3B and other articles were applicable in some effect, but mostly because of Article 3B. The employer has taken the position that in 3B, once this action occurs where they contract with someone else, supposedly, that all you have to do is decide whether or not anyone was laid off or fired, and that ends the case. It's much broader than that. The arbitrator, as Judge Gregory's indicated, had two competing provisions to deal with. Article 2, Article 3A, and 3B, but primarily Article 3B. So in his situation, he was looking at all the evidence. Now, Mr. Dowell, I'm sorry to interrupt, but so I think I would agree with you if Article 3B simply had the first two sentences of that section, you know, the company shall have the right to assign a contract work, and then this right is limited only to the extent that no one gets laid off. If that was the only thing in the agreement, and the arbitrator had decided, you know, that right has to be analyzed against the article that identifies the union as a sole bargaining representative, and he decided, as apparently he decided here, that what in fact was happening is that the union's rights were being impaired, right or wrong, that's the arbitrator's call, and we likely, I would likely agree with Judge Bailey that we are not in a position to question that. But you've got this third sentence that really has to mean something, right, that the sole question for the arbitrator is whether the company has violated the foregoing limitation. What do you think that means? Well, if in fact the first sentence, the first part of that applies, then you'd have to go ahead and say was there a layoff or a discharge. What he determined was that the first part of that did not apply. The company in its opening statement argued that this is a contracting out provision. In fact, in his brief, the employer's brief to the arbitrator, referred to 3B as nothing more than a standard commonly known as contracting out provision. So then the arbitrator looked at that provision and how it was presented at the arbitration hearing as a contracting out. He asked by the counsel for the union at the case, where is the contract? What contract did you enter into with the CCT group, separate entities owned by the same company? Where is the contract that exists in here? And there was no contract, different from what the RSOs, where they had a separate collective bargaining agreement and there's a long history of how that occurred. Yeah, that's a great analysis as to the first sentence, the right to contract or sign. But the sole question for the arbitrator pursuant to this agreement, this clause, is whether the company has violated the foregoing limitation, that is the limitation on laying off or discharging people. Did the arbitrator answer that question? The arbitrator said that that provision above that didn't apply, so you never get to the sole question about whether there's a layoff. But there's nothing in there that says that you look to the first sentence. It just says in the event of arbitration over the company's exercise of the right set forth herein, the sole question is whether there's been a violation of the limitation, the limitation being whether or not anybody's been laid off. But the exercise of that right means a right to contract. The arbitrator found there was no contract, so there wasn't a right to contract unless there's a contract. He determined there was no contracting out as the employer identified what that language meant. Now, in their brief and today, they argue where the arbitrator didn't deal with the word assign. At no point in time during the opening statement, during the hearing, or in the brief, did the employer ever take the position that the arbitrator should have considered the word assign being differently from contracting out. The employer in its post-hearing brief said that whole provision commonly referred to or commonly known as a contracting out. It didn't differentiate that, didn't put on any evidence about the word assign, didn't deal with that issue at all, so they dealt with the whole thing as a contracting out provision, and there was no contract. There was no contract at all between the CCT and the Kentucky, or the William Power Company. There was no contract, so how could there be contracting out without a contract? All the other some contractors in there, they had a specific collective bargaining agreement or a specific contract with the employer. It had a scope of work to it. It had a period of time it was going to be. None of that happened, and when they brought the CCT employees over to work at the William Power Plant. So the arbitrator, with the evidence he had beforehand, said it's not a contracting out situation. So if it's not a contracting out situation, then the other provision, the only thing you have to question is whether or not people write off. It's not applicable. He interpreted the collective bargaining agreement, looked at the entire agreement and not just a portion of the agreement, and thoroughly and carefully analyzed all those provisions, including the provision in Article 10, which is the grievance procedure, and Article 13, which is what some commonly call the zipper clause. Can I ask a procedural question? So you make a good point about the first clause sort of being conditional to the company's exercise of the rights set forth herein. So is there something in the record that says the company hereby exercises its right under Article 3 to contract or bring these workers in? Is there something in writing about that? There is not. That's one of the issues that came up early on in the process is that the union had no idea this was going to happen until they were told late in the process, right before those employees came over, by the way, here we're going to do something. They had no prior discussion with them. They didn't try to get some kind of an agreement how it could work out. As you pointed out, there was agreements for those subcontractors to come in with the RSOs. That's been done for a number of years. Used to be all of those employees were full-time employees of the electric company. They realized that they didn't have that much work for them to do at one particular plant, so they developed these new companies and had those employees go to work for them, and they could go to multiple plants to do mostly outages. So they come in here, and they do the outages, and they go somewhere else. But there's a contract for that. There's a scope of work for that. There's a time period for that. This had none of those things, and that's why the arbitrator, we think rightfully, decided that, look, there's not a contract here that could be considered, quote, unquote, contracting out. But didn't the arbitrator consider the meaning of the word assign at that point? If there was no contract, could you not have interpreted the word assign to mean that you could bring in other employees? I'm sorry.  Go ahead. At no time did the employer ever take the position during the arbitration hearing or even before the arbitration hearing when they got their response, which was part of the record. At no time did they say, well, even if it's not contracting out, it's an assignment we have the right to make. At no time did they present that to the arbitrator to present it to the union. The only thing they referred that provision to in 3B was a contracting out provision. That is, the entire provision of that, assign and contract out, was only referred to. The arbitrator should not have to guess or speculate if they are trying to treat assign differently from the contracting out if he's not told that. They're not given information about that or not put on evidence about that. That was not done at the arbitration hearing. That's part of the record as well. So we believe that the arbitrator properly went through the collective bargaining agreement, examined all the provisions that both parties asked him to, interpreted them. Certainly under the scope of a review of arbitration decisions, he was arguably interpreting and applying the collective bargaining agreement. So we believe his decision should have been upheld. The Judge Bailey agreed with that, and that's how we eventually got here. Now, on the other issue that's before the court on the complete agreement, in our supplemental brief on that issue, we essentially say that this case is not much different from Peabody. Peabody is a little bit different, but it's not much different. We have just a different take on it, though. We believe if the court would decide, when it brought it up sui sponte, to apply that provision in this particular, or that rule in this particular situation, if you want to save judicial economy, what you would do is affirm the decision of the district court, remand it back to the district court with instructions to have the arbitrator get involved and make a decision on what the remedy should be. That way you don't want to have two bites at the apple in regard to the initial decision, whether the arbitration decision ought to be upheld. The only issue the court, if it were to go to them, would have to deal with would be the remedy issue. We believe that would be a better use of judicial time, rather than what the employer wants you to do, is to, first of all, ignore the complete agreement rule, or decision rule, and say, no, you're going to go ahead and decide on the merits, which we're okay with that because we think we're good on the merits, or they want you to have you overrule the decision and send it back to the arbitrator, or to the district court for instructions to do the whole thing over again. We think that's not a good judicial use of time, nor is it in the best interest of either one of the parties. All right. Thank you. Thank you, Mr. Dahl. Your Honors, may it please the Court. First point I'd like to make on rebuttal is that, in fact, the arbitrator did understand that the company's issue before it was whether there had been an assignment. In discussing the management's position in the arbitrator's award, and the position of management begins on page 259, goes on to page 260. But on the top of page 260, it's very clear. The arbitrator says it points to the zipper clause in article 13, that's management company, and argues that since the collective bargaining agreement provides for the right to contract work, the grievance should be denied. It reasons that any claims must be based on contractual provisions restricting management's rights to make work assignments to persons not represented by the union. The only restriction is that the assignment must not result in layoffs. Further applies the zipper clause. And then it goes on to say the employer observes management was already considering the use of outside contractors for anticipated increased coal deliveries when the fire at CCT occurred. The employer notes that there are contractor employees working at the Mitchell plant every day, as well as the RSO employees who routinely work at the plant. The RSO employees are assigned employees. There's no question that they were not contract employees. They were assigned employees, just like the CCT employees were assigned. So with respect to the third sentence in article 3 that begins, in the event of arbitration over the company's exercise of the rights set forth herein, you pointed to the section where the arbitrator, in your mind, clearly acknowledged that that was what the management was intending to exercise. But I understand Mr. Dahl's position to be that the arbitrator was entitled to interpret that clause and decide for himself whether or not that exercise was pursuant to the contract. Maybe he got it completely wrong, but isn't that still about contract interpretation and the arbitrator's wide discretion to decide the issue and our limited discretion to overturn that decision? Your Honor, under Clinchfield Coal, when the arbitrator ignores provisions such as the word assignment, just as the arbitrator in Clinchfield Coal ignored mining operations versus mining lands, that that is not just an interpretation of the CBA. It's exceeding the scope of the CBA by ignoring whole provisions. And so, Your Honor, in that instance. But he didn't ignore it. What you read, he talked about it. The question is you didn't have a contract, and therefore it's broader than that. You're taking a position that because that's your position, that cabinet is the whole arbitration. It doesn't. You look at the whole context of it. You didn't answer. Did you have a contract? It was asked for? Was counsel mistaken or misinformed, Mr. Dahl, in that? Your Honor, no. There was no contract because it wasn't the term contract under the article 3B of the CBA was not what was being invoked. It was an assignment. There was no contract with the RSO employees either. It was an assignment. It was an assignment from CCT to Wheeling Power, and it was an assignment of the work by Wheeling Power. But you took it back and started with is there a contract. If it's not, then you don't get to the question. The assignment occurs within the contract, right? In the sense of a CBA being the contract, there was a contract. Oh, yeah, we talked about that. Yeah. About the workers. In the sense of there being contracts. Was Mr. Dahl wrong when he said there was no contract in terms of these employees? You heard the argument, didn't you? Yes, Your Honor. Was he wrong about that? He was not wrong about that. It wasn't the issue because the issue. Well, your issue. You don't get determined just because it's your position. Well, Your Honor. It's more of an imperial view of it, isn't it? Your Honor, it says assigned or contract. And so assigned or contract means that it could be either assigned or contracted. And in this instance, it was assigned. The arbitrator looked at that language and felt that it was infirm. Your position was infirm in that regard. That was wrong, right? It was more than wrong. It didn't take into account the word assigned. What do you mean it didn't take into account? The arbitrator never considered whether the work was assigned versus whether the work was contracted. So he got it wrong. But he was interpreting the contract contrary to the way you would have, right? No, Your Honor, because he wasn't looking at the word assigned at all, even though that was management's position and it's a word in the collective bargaining agreement. Isn't it possible that he was interpreting it and thought that assigned and contract meant the same thing? Your Honor, they considered that. I believe in the Clinchfield-Cole case and in other cases as well. And the court has held that even though you have broad discretion in interpreting a collective bargaining agreement, if you willfully ignore words that are in the collective bargaining agreement or ignore a phrase like the two phrases mining operations, coal mining operations versus coal lands, that if you ignore the terms, that's not interpreting it differently. That's ignoring the terms of the collective bargaining agreement and exceeding your authority. I see my time is up. Your Honors, the company respectfully requests that the district court decision be reversed and that the arbitration decision be vacated. Thank you, Your Honors. Thank you, Ms. Smith. I want to thank both counsel for their arguments this morning. We'll come down and greet you and then take a brief recess before moving on to our final two cases. This honorable court will take a brief recess.
judges: Albert Diaz, Roger L. Gregory, Jasmine Hyejung Yoon